Employers Mutual Casualty Company, Subrogee of Clark-Maple Chevrolet Company, Plaintiff-Appellant, v. Trimon Elevator Company and Richard Moore, Defendants-Appellees.

Gen. Nos. 50,170, 50,254.

First District, Fourth Division.

May 20, 1966.

Brody & Gore, of Chicago, for appellant.

Michael J. Costelio, of Chicago, for appellee, Trimon Elevator Company; no appearance made for appellee, Richard Moore.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This is a consolidated appeal from two adverse judgments entered against Employers Mutual Casualty Company, subrogee of Clark-Maple Chevrolet Company, plaintiff, in an action brought to enforce payment on employer's lien created by section 5(b) of the Workmen's Compensation Act of Illinois (Ill Rev Stats 1955, c 48, § 138.5(b)). Separate judgments in favor of the two defendants were entered by the trial court on different days.

The defendant, Richard Moore, was injured on March 15, 1956, while in the employ of Clark-Maple. The plaintiff, Employers Mutual Casualty Company, as workmen's compensation carrier of Clark-Maple, paid $1,150 to Moore by reason of the injury and expenses incurred by him. Thereafter, Moore brought a lawsuit against Trimon Elevator Company as a third party tort-feasor. On June 29, 1956, the plaintiff sent a registered letter to Trimon Elevator advising of plaintiff's rights and claim to a lien pursuant to the provisions of the Workmen's Compensation Act. On November 19, 1957, the plaintiff sent a letter to Trimon Elevator setting forth that plaintiff had expended the sum of $1,500, and making a demand for reimbursement. The record indicates that Trimon Elevator, through its agent, acknowledged receipt of the second letter. Plaintiff did not intervene in the lawsuit between Moore and Trimon Elevator but depended upon the Workmen's Compensation Act and the plaintiff's lien filed with Trimon Elevator to protect its rights. On February 8, 1963, the trial court, by agreement of the parties, entered a judgment order setting forth the following findings: that Trimon Elevator

was guilty of negligence; that Moore had exercised due care and caution for his own safety; and that the employer, Clark-Maple Chevrolet, was guilty of negligence. The court ordered that Moore be awarded $4,000 and costs. Trimon Elevator then paid Moore $4,000, but neither Moore nor Trimon Elevator notified plaintiff of the settlement or judgment. On February 8, 1963, the court entered a satisfaction of judgment order.

On December 23, 1963, Clark-Maple Chevrolet, having entered no appearance in the case, petitioned the court for relief under section 72 of the Illinois Civil Practice Act. On January 17, 1964, the court found that Clark-Maple Chevrolet could not maintain an action under section 72 since the court had no jurisdiction of the petitioner, and the petitioner did not intervene, participate in any way or submit itself to the jurisdiction of the court. The court struck the petition of Clark-Maple Chevrolet and further ordered that the striking of the petition was without prejudice to Clark-Maple Chevrolet's filing a separate action against Moore or Trimon Elevator or either. The court further stated in the order that it was not ruling or indicating any view on the validity of any asserted claim of Clark-Maple Chevrolet against either or both. The court further found that the previous findings as to Clark-Maple Chevrolet (that Clark-Maple Chevrolet was negligent) are not to be considered and were not made as any formal adjudication of the rights, if any, of Clark-Maple Chevrolet.

On February 25, 1964—a year and 17 days after the day on which the consent judgment in the case of Moore against Trimon Elevator was entered—the plaintiff, Employers Mutual Casualty Company, as subrogee of Clark-Maple Chevrolet Company, brought a suit against Moore and Trimon Elevator in the Municipal Court of Chicago to enforce payment in satisfaction of plaintiff's statutory lien on the judgment, award or settlement

between Moore and Trimon Elevator. An amended complaint asking for the same relief was thereafter filed on July 3, 1964. Moore filed an answer; Trimon Elevator moved to dismiss, and set up the statute of limitations as a special defense. The trial court sustained Trimon Elevator's motion and dismissed the amended complaint as to Trimon Elevator only. The court further ordered that the plaintiff take nothing by its amended complaint and that the defendant go hence without day. Subsequently, Moore withdrew his answer and moved to dismiss, setting up the statute of limitations, which motion was sustained in the trial court. The plaintiff appeals from the judgment orders of dismissal both as to Trimon and Moore. Trimon Elevator has appeared in this court and has filed briefs; Moore has neither appeared nor filed briefs.

In this court plaintiff contends that Trimon and Moore made a settlement without paying any attention to plaintiff's lien; that plaintiff had given proper notice of its lien interest and had made proper demands thereunder; that the purported settlement made between Moore and Trimon was in violation of plaintiff's rights; and that plaintiff's cause of action against Moore and Trimon arose at the time of the improper settlement. Trimon argues that the trial court was correct in dismissing plaintiff's suit against Trimon and says that while it is acknowledged that plaintiff had a lien, plaintiff's action thereon should have been commenced within two years from the date of Moore's injury, and that this action is therefore barred by the statute of limitations.

Section 5(b) of the Workmen's Compensation Act of Illinois (Ill Rev Stats 1963, c 48, § 138.5(b)) provides inter alia that if the employee brings an action against the third party tort-feasor, and if judgment is obtained or settlement made, whether with or without suit, ". . . then from the amount received by such employee . . . there shall be paid to the employer the amount of com-

pensation paid or to be paid by him to such employee. . . ." The act continues:

"If the injured employee . . . shall agree to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the said employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party.

"In such actions brought by the employee . . . , he shall forthwith notify his employer by personal service or registered mail, of such fact and of the name of the court in which such suit is brought, filing proof thereof in such action. The employer may, at any time thereafter join in said action upon his motion so that all orders of court after hearing and judgment shall be made for his protection. *No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee* . . . , except in the case of the employers, such consent shall not be required where said employer has been fully indemnified or protected by Court order.

"In the event the said employee . . . shall fail to institute a proceeding against such third person at any time prior to 3 months before said action would be barred at law said employer may in his own name, or in the name of the employee, . . . commence a proceeding against such other person for the recovery of damages on account of such injury or death to the employee, and out of any amount recovered the employer shall pay over to the injured employee . . . all sums collected from such

129

other person by judgment or otherwise in excess of the amount of such compensation paid or to be paid under this Act, . . . and costs, attorney's fees and reasonable expenses as may be incurred by such employer in making such collection or in enforcing such liability." (Emphasis supplied.)

██ It is necessary for us to interpret the Workmen's Compensation Act with reference to liens. In an article in University of Illinois Law Forum, 1957, page 253, George T. Frampton, a professor of law at the University of Illinois, makes the following statement:

"Sir John Salmond described case-law as 'gold in the mine' and statute-law as 'coin of the realm ready for use . . . brief, clear, easily accessible and knowable. . . .' He had never read the Illinois Workmen's Compensation Act.

"The lawyer who consults that act before first reading it from beginning to end will likely be caught in its Minotauran labyrinths and devoured. The more careful approach of reading it, however, is an alternative no less grim. True, it does offer some competition with other bedside reading. Like the Bible, it is an authoritative work of many minds that have made their contributions to it in different eras, and it is provocative in the variety of plausible interpretations suggested by some of its critical passages. An element of suspense exists, as in those mystery books where the significance of what one reads cannot be grasped until the very end, if then."

In an interpretation of the statute the court must supply that which is missing from the statute in a manner consistent with the overall purpose of the act and consistent with other cases.

In the case before us Trimon cites as authority Danville Producers Dairy for Use of Employers Mut. Lia-

bility Ins. Co. of Wisconsin v. Preferred Risk Mut. Ins. Co., 33 Ill App2d 359, 179 NE2d 439, in which case the employer's insurance carrier sued the third party tort-feasor's insurance carrier for the amount of compensation paid by the employer to the employee's widow. The defendant insurance carrier had made a settlement with the widow without regard for the employer's lien, without the consent of the lien holder, and in spite of the fact that defendant had been notified of the employer's lien. The court held that the plaintiff insurance carrier was barred by the 2-year statute of limitations from pursuing an action against the third party tort-feasor's insurance carrier and that the proper course would have been to sue the defendant within two years from the date of the employee's injury or to intervene in the suit brought by the employee against the third party tort-feasor. In that case the court relied on Joseph Schlitz Brewing Co. v. Chicago Rys. Co., 307 Ill 322, 138 NE 658, which case interpreted section 29 of the old Compensation Act prior to the 1935 amendment as requiring that the employer's subrogated action be brought within the period of limitations governing the employee's third party action. However, the rule with reference to the period of limitations applied to an employer's subrogated action; in other words, the employer stepped into the shoes of the employee and was governed by the same statute of limitations. In the Danville case the court said:

> "And we do not reach the issue of whether within the appropriate period of limitations an employer may enforce his statutory lien as a separate cause of action against a third party or his insurance carrier."

If the Danville case means that a lien properly in existence under section 138.5(b) of the Illinois Compensation Act cannot be enforced against the em-

131

ployer after the running of the statute of limitations governing a suit brought in connection with the accident and commencing on the date of the accident, we cannot agree. That court held the governing period of limitations to be two years where the employer's compensation carrier was attempting to enforce its lien rights against the employee's widow and the third party tort-feasor's principal. The court apparently misapprehended the impact of the wrongful death statute of limitations, which was one year (Ill Rev Stats 1959, c 70, § 2) and which applied where the employer was bringing the original action in his employee's name. Lincoln Park Coal & Brick Co. v. Wabash Ry. Co., 254 Ill App 323, reversed on other grounds, 338 Ill 82, 170 NE 8; Goebel v. Mize, 14 Ill App2d 69, 143 NE2d 73. (The plaintiff in Danville brought his action to enforce his lien rights three years after the accident, and exactly two years and one day after the settlement between the widow and the third party tort-feasor.) We cannot agree that the statute of limitations governing the original action is controlling in the instant case, and in so holding we do not feel that we are doing any more than giving a reasonable interpretation to the Act. As first enacted in 1913, the Workmen's Compensation Act made the question as to whether or not the third party tort-feasor was bound by the Act a meaningful distinction. Prior to 1952 the law was that where the third party tort-feasor was bound by the Act the employee was deprived of his common-law tort action against the third party tort-feasor who was bound by the Act either by compulsion or election. In such a case the cause of action was transferred to the employer. In 1952, in Grasse v. Dealer's Transp. Co., 412 Ill 179, 106 NE2d 124, the court held that provision of the Workmen's Compensation Act to be invalid since it denied employees compulsorily bound by the Act the equal protection of the law guaranteed by the Illinois and Federal Constitutions.

132

The court further held that the result of its determination was to restore to the employee the same rights he had against a negligent third party prior to the enactment of paragraph 1 of the Workmen's Compensation Act. The legislature deleted paragraph 1; under the 1953 Act it became immaterial whether or not the third party was under the Act in an action by an employee against a third party tort-feasor.

As we pointed out in discussing the Schlitz case, the question was as to the right of an employer, in lieu of the employee, to bring a suit and in that case the court stated that the Act's earlier provision that the employer was subrogated to the employee's rights was an unfortunate use of the word "subrogated" and that what it really meant was "transferred"; therefore, since the employer stood in the shoes of the employee he would not have a longer limitation than the employee would have had.

However, in the instant case, plaintiff is not standing in the shoes of the employee in bringing this action against the third party tort-feasor, but rather, is bringing the action in its own name in order to enforce its right against both the employee and the third party tort-feasor who have failed to give proper regard to the employer's lien rights.

The Workmen's Compensation Act provides in relevant part: first, if any compensation is received by the employee from his employer the employer may have a lien on any award, judgment or fund out of which the employee might be compensated from such third party; second, if such an action is brought by the employee against a third party he must notify his employer. It is further provided that the employer "may, at any time thereafter join in said action upon his motion so that all orders of court after hearing and judgment shall be made for his protection." It is also provided that "no release or settlement of claim for damages by reason

133

of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee," unless the employer has been fully indemnified or protected by court order.

In the instant case the plaintiff is seeking, by virtue of his lien rights, to recover the money paid by him to the employee. There are various types and classes of liens, such as a common-law lien which ordinarily is considered to be a legal claim or charge on property, either real or personal, as security for the payment of some debt or obligation; an equitable lien, which is a right recognized in equity, though not at law, to have property applied to the payment of a particular debt; and a statutory lien, which may be provided for by the legislature subject to constitutional limitations. In 53 CJS Liens § 5, it is said that a statutory lien arises and exists only where there has been at least a substantial compliance with all the statutory requisites essential to its creation and existence, but where there has been such a compliance the lien arises by operation of law. In section 21 of CJS Liens it is said that where a statute creating a lien provides no method for its enforcement, it may be enforced by an ordinary action at law for the collection of the debt. [Citing Fristoe v. Crowley, 142 La 393, 76 So 812, error dismissed 251 US 179, 40 S Ct 116, 64 L Ed 2131.] The Act does not provide an exclusive method for enforcing the lien.

The lien of an employer who has paid compensation to an employee comes into effect at the time the employer gives notice to the third party tort-feasor. It is also provided in the statute that an employer "may" join in the employee's action. In order to protect the employer the statute provides that a satisfaction of judgment shall not be valid without the consent of the employer. In the instant case no notice was given by the employee or the third party tort-feasor to the employer,

nor was there any satisfaction of judgment properly entered. Here the employer knew nothing about the judgment or the payment thereof by the third party tortfeasor. There are very few cases on this particular subject. There is something analogous to a lien of this character in an attorney's lien; however, in the statute which provides for attorney's liens there is a provision that after the party against whom a client has a suit has been properly notified, the lien attaches to a judgment or to any money or property which may be recovered on account of such suit; and that on petition any court of competent jurisdiction shall adjudicate the rights of the parties and enforce the lien.

In Baker v. Baker, 258 Ill 418, 101 NE 587, a petition was filed in the Circuit Court by an attorney representing the plaintiffs to adjudicate the rights of the parties and to enforce his lien under the Attorney's Lien Act. The court said:

> ". . . While the act is entitled as one creating an attorney's lien and for enforcement of the same, and while it in terms gives the attorney a lien for his fees, the lien created partakes but little of the elements and nature of the ordinary lien. It attaches to any verdict, judgment, decree, or the proceeds of any settlement. In other words, it is a lien upon the proceeds, only, of the litigation or settlement of the claim. Should the defendant or debtor ignore the notice claiming a lien and settle in full directly with his adversary, there is no specific property left in his hands which could be applied to the payment of the attorney's fees upon foreclosure or other proceedings to enforce the lien. The only recourse that an attorney has under those circumstances is to bring suit, recover a judgment and collect it in the ordinary way. . . . In short, when the notice claiming a lien is served on the defend-

135

ant or debtor under this statute it has the effect of an assignment of an interest in any judgment or decree that may be rendered or in the proceeds of any settlement that may be made by the client, and is such an assignment that the defendant or debtor is bound to respect. This creates a new and a substantial right in favor of the attorney and divests the client of substantial rights that he theretofore possessed."

The Workmen's Compensation Act provides that if the employer has been given notice of a suit being brought by his employee against the third party tort-feasor, the employer may join in the action; however, this does not provide an exclusive remedy. To hold this as an exclusive remedy on the part of the employer would to a great extent cut down to the very minimum the protection which the act intended to give him.

In the instant case the statement of claim filed by plaintiff against Trimon Elevator and Richard Moore was dismissed by the trial court solely on the ground that the statute of limitations had run against the plaintiff. In this court the defendant, Trimon Elevator, argues that "It is hornbook law that the Statute of Limitations begins to run when the right of action accrues." We hold that plaintiff's cause of action under the lien against the defendant did not accrue until February 1963, when an agreed judgment order in favor of Moore was entered against the defendant.

When the plaintiff notified the defendants, Trimon Elevator and Richard Moore, on June 29, 1956, that plaintiff claimed a lien under the Workmen's Compensation Act, the plaintiff established its lien. There would seem to be no reason in logic or in law why the plaintiff could not enforce that lien in a separate action as it attempted to do. Arnold Lies Co. v. Legler, 26 Ill App2d 365, 167 NE2d 813. The judgment of Moore

against Trimon was not satisfied under the Workmen's Compensation Act because there was on record no written consent of the employer approving that judgment satisfaction.

The judgment orders of the trial court dismissing the instant suit brought by the plaintiff against Trimon and against Moore are reversed and the cause is remanded with directions that the trial court shall order that answers be filed by both Trimon Elevator and Richard Moore and that the cause shall then proceed in accordance with the views expressed in this opinion.

Reversed and remanded.

DRUCKER, P. J. and ENGLISH, J., concur.